**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN COLEMAN PIGNATO,
<u>Plaintiff-Appellant,</u>

v.

COMMONWEALTH OF VIRGINIA,
DEPARTMENT OF ENVIRONMENTAL

QUALITY; PETER W. SCHMIDT, in his
official capacity as Director of the
Virginia Department of
Environmental Quality,
<u>Defendants-Appellees.</u>

No. 96-1379

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-95-461-3)

Argued: January 30, 1997

Decided: February 25, 1997

Before RUSSELL and WILKINS, Circuit Judges, and HERLONG,
United States District Judge for the District of South Carolina,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Broome Thorsen, THORSEN & MARCHANT,
Richmond, Virginia, for Appellant. Guy Winston Horsley, Jr., Senior

Assistant Attorney General, OFFICE OF THE ATTORNEY GEN-
ERAL, Richmond, Virginia, for Appellees. **ON BRIEF:** James S.
Gilmore, III, Attorney General of Virginia, Catherine C. Hammond,
Deputy Attorney General, Neil A.G. McPhie, Senior Assistant Attor-
ney General, OFFICE OF THE ATTORNEY GENERAL, Richmond,
Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

John C. Pignato, a former employee of the Department of Environ-
mental Quality ("DEQ") of the Commonwealth of Virginia, appeals
the district court's ruling: (1) that the doctrine of collateral estoppel
precluded him from litigating his due process and state breach of con-
tract claims against the DEQ and its director, Peter W. Schmidt; and
(2) that his First Amendment claim against the DEQ and Schmidt
could not survive summary judgment. We affirm.

When Pignato was hired in 1984 as the Director of Administration
for the State Water Control Board (the "WCB"), he was a Grade 17
employee. At that time, Grade 17 employees experiencing employ-
ment problems utilized the Commonwealth's grievance procedure
under the Virginia Personnel Act ("VPA"). [1] Employees having access
to the grievance procedure were "classified" employees; those without
access were "exempt" employees.

On July 1, 1985, eight months after Pignato's hiring and almost 10
years before his employment with the Commonwealth terminated, a
change in state law re-categorized certain positions as "exempt"

_____

[1] Va. Code Ann. § 2.1-110 - 116 (Michie 1985 & Supp. 1996).

2

employees.**2** In 1993 the WCB and three other agencies were consolidated to form the DEQ. Pignato transferred to the DEQ and assumed the position of Special Assistant for Program Development. This position was classified as an "exempt" position without access to the grievance procedure, before Pignato accepted reassignment.

When Governor Allen began downsizing state government, the DEQ decided to abolish the position of Special Assistant for Program Development. As a result, Pignato's employment with the DEQ terminated on June 10, 1994. Within six weeks of his firing, Pignato challenged his termination by filing an action in county court**3** and by filing an administrative complaint with Schmidt under the VPA's grievance procedure. Pignato's administrative complaint asserted that his right to the grievance procedure began in 1984 when he was hired; that his right was not eviscerated by the 1985 statute change; and that his right survived the 1993 agency consolidation.

The administrative group reviewing Pignato's complaints determined that grievance rights are not portable, and that upon accepting the Special Assistant position--a known "exempt" position--Pignato lost his right to the grievance procedure. Pignato appealed the administrative decision to the Circuit Court of the City of Richmond (the "Richmond Court").

After reviewing the case de novo, the Richmond Court, affirmed the administrative decision. The Richmond Court held that Pignato was not entitled to access the grievance procedure because: (1) Pignato's transfer resulting from the 1993 consolidation was not a ruse to

_____

**2** Those employees re-classified as"exempt" included: executive officers, employees directly reporting to an agency head, those immediately below that level, and those at pay grade 16 or higher. Va. Code Ann. § 2.1-116(A)(16) (1985) (amended 1995) (deleting former subdivision (A)(16) which pertained to officers and employees of executive branch agencies).

**3** In the Circuit Court of Chesterfield County, Pignato sought an order permitting him access to the grievance procedure, and an injunction forestalling his firing. The court dismissed his actions for want of subject matter jurisdiction because he had not exhausted his administrative remedies.

3

eliminate his vested rights; (2) Pignato's position was classified as "exempt" before Pignato accepted the position; and (3) Pignato's reassignment and the 1993 consolidation resulted from a legitimate exercise of governmental discretion undertaken for purposes unrelated to Pignato's employment.

Pignato then initiated an action in federal district court asserting that the DEQ and Schmidt violated his First and Fourteenth Amendment rights, respectively, when they fired him in June 1994, allegedly because of his lack of political associations, and when they denied him access to the Commonwealth's grievance procedure upon his termination. Pignato also brought an independent state breach of contract action. Noting that Pignato's due process and breach of contract claims involved factual issues identical to those that had been fully and fairly litigated before the Richmond Court, the district court ruled that the doctrine of collateral estoppel precluded Pignato from relitigating those same issues in federal court.

Collateral estoppel, as applied in Virginia, precludes a party from re-litigating any issue of fact decided adversely against that party in another case involving a different cause of action. **4** The district court found that the Richmond Court had previously determined that upon the 1993 consolidation Pignato became an "exempt" employee, and was neither entitled to access the grievance procedure nor entitled to a legitimate expectation in continued state employment.

With respect to Pignato's First Amendment claim that the DEQ and Schmidt fired him for his lack of political associations with the Republican party, the district court found the record void of any genuine issue of material fact concerning Schmidt's knowledge of Pignato's political affiliation. Pignato failed to show that Schmidt knew Pignato was not affiliated with the Republican party, and failed to produce any evidence tending to show that his firing was politically motivated. Consequently, the district court granted the DEQ's and Schmidt's motions for summary judgment.

_____

**4 Angstadt v. Atlantic Mut. Ins. Co.**, 457 S.E.2d 86, 87 (Va. 1995); Reid v. Ayscue, 436 S.E.2d 439, 440 (Va. 1993).

4

Having carefully reviewed the record, briefs, and contentions of the parties at oral argument, we can find no error in the district court's applying the doctrine of collateral estoppel to Pignato's due process and breach of contract claims, and granting the DEQ and Schmidt summary judgment with respect to Pignato's First Amendment claim. Accordingly, we affirm the decision of the district on the opinion of that court.

AFFIRMED

5